## 10219

### BULLARD ET AL. v. COX ET AL.

#### (101 S. E. 111.)

1. HOMESTEAD — JUDGMENT PRIOR TO CREATION OF THE RIGHT NOT AFFECTED.—The right of homestead did not exist against a judgment given in 1867, which was more than a year before the right of homestead was created.

2. EXECUTION—PRESUMPTION AS TO VALIDITY OF SHERIFF'S DEED ON SALE.—After elapse of more than 40 years from the date of a sale, under execution, it will be presumed that the sheriff made a deed in the performance of his duty, and did all else to effect a lawful sale, and that. the deed was made in conformity with the entry in the salebook.

3. HOMESTEAD—SALE ON EXECUTION WITH ERRONEOUS RESERVATION OF HOMESTEAD PASSING THE FEE.—Where land was subject to a judgment lien when no homestead right existed, but the parties erroneously thought there was, sale under execution subject to homestead "until after the expiration of its limitation" passed the fee to the purchaser under the sheriff's deed.

4. EXECUTION—WAIVER OF RIGHT TO SUBJECT LAND TO SALE.—A judgment creditor did not waive his right to subject land to sale under execution by consenting to the assignment of a homestead, by writing the notice of claim therefor when he believed that judgment debtor had such an existing right, and that the fee could be aliened, and that the homestead would follow it like the incumbrance of a mortgage, and permitted the land to be so sold under execution.

5. HOMESTEAD—EVIDENCE OF UNDERSTANDING OF PARTIES TO SHERIFF'S DEED.—Evidence *held* to show that a deed from execution purchaser, carrying the fee to grantee subject to a homestead was understood by all the parties to alienate the fee, but to give the judgment debtor the privilege of occupancy and enjoyment until her death.

6. EVIDENCE—PAROL EVIDENCE OF UNDERSTANDING AS TO EXECUTION PURCHASER'S DEED.—Parol testimony was competent to show that execution purchaser's deed purporting to convey the fee subject to debtor's homestead, was made after a conference with all parties.

Before MEMMINGER, J., Marlboro, Fall term, 1917. Reversed.

Action by Flora Bullard and others against Samuel Cox and others. Judgment for defendants, and plaintiffs and the defendant, Samuel Cox, appeal.

*Messrs. Townsend & Rogers* and *D. D. McColl,* for appellants. *Messrs. Townsend & Rogers* cite: *As to the lien of judgment of R. E. Townsend being superior to claim of homestead exemption;* 28 S. C. 118; Code of 1870; Act of November, 1873; 24 S. C. 428; 7 S. C. 146; 12 S. C. 368; Thompson on Homesteads, sec. 230; 7 S. C. 172; 18 S..C. 377; 18 S. C. 81 (differentiated). *As to waiver:* 17 S. C. 372. *As to competency of parol testimony to show negotiations between parties leading up to the execution of a contract:* 65 S. C. 69; 575 S. C. 357; Greenleaf on Evidence, section 268; 16 S. C. 357; 22 S. C. 48. *As to estoppel:* 13 S. C. 355; 6 S. C. 369; 30 S. C. 612; 21 S. C. 126; 5 S. C. 75 (differentiated); 18 S. C. 75; 92 S. C. 652; 88 N. C. 238; 90 S. C. 204; 63 S. C. 235; 13 S. C. 371; 45 S. C. 51; 56 S. C. 173. *As to the doctrine of communis error facit jus:* v8 S. C. 355. *As to the kind of homestead allowed under the Act of 1868;* 21 S. C. 138.

*Messrs. Gibson, Muller & Tison* and *Stevenson, Stevenson & Prince,* for respondents. *Mr. W. M. Stevenson* cites: *As to title not being changed by the homestead proceeding:* 14 Stats. 1868, p. 19. *As to there being no sale of a home-*

*stead under execution:* 19 S. C. 242; 20 S. C. 248; 24 S. C. 428; 21 S. C. 19-20-21; 21 S. C. 136-137; 37 S. C. 102; 5 S. C. 84; 53 Ala. 452; Thompson on Homestead and Exemption, sec. 549, sec. 635; Wapley on Homestead, p. 488; 87 N. C. 79; 76 N. C. 423; 15 Encyclopedia of Law, 2d Ed. 189; 48 Am. St. Rep. 621; 70 N. C. 322; 92 N. C. 652; 90 N. C. 204; 89 N. C. 369; 65 N. C. 447; 10 Wash. 379; 127 Mo. 189; 48 Am. State Reports, p. 624; 18 S. C. 493. *Appellants can not object to the assignment of the home-stead:* 5 S. C. 84; 13 S. C. 368; 21 S. C. 135; 12 S. C. 314; 41 S. C. 109. *As to estoppel:* 13 S. C. 355; 21 S. C. 135; 65 S. C. 236, and cases cited; 76 N. C. 429; 85 N. C. 96. *It is clear, then, upon the deed and written records in the case that the legal title never passed from Mrs. Cox (Mrs. Newton) and was vested in her till death:* 99 S. C. 151; 54 S. C. 343; 40 S. C. 100. *As to the exclusion of oral testimony:* Pom. Rem. No. 603; 82 S. C. 70; 40 S. C. 98; 24 S. C. 129; 42 S. C. 46. *As to plea of ignorance:* 40 S. C. 101; 15 Am. & Eng. Enc. of Law 637; 2 Pom. Eq. Jur. No. 483; 4 Rich. Eq. 349; 35 S. C. 360. *As to estoppel:* 31 S. C. 486; 34 S. C. 187.

*Messrs. Gibson, Muller & Tison* cite: *As to homestead being protected from all invasion by process of the Court:* 18 S. C. 78; 22 S. C. 312; 28 S. C. 72; 24 S. C. 428; 20 S. C. 522; 22 S. C. 309. *As to the exclusion of oral testimony:* 69 S. C. 100; 79 S. C. 139; 69 S. C. 93; 48 S. C. 108; 82 S. C. 70; 49 S. C. 145; Speer's Eq. 464; 2 Rich. Law 373; 20 Cyc. 318. . *As to incompetency of confidential communication between attorney and client:* 30 S. C. 150; Greenleaf Evid. 243, and notes; Jones on Evidence, sec. 749. *Other conversations with Mrs. Newton incompetent:* 3 McCord's Law 222; 23 S. C. 250; 9 Rich. Law 750, pp. 156, 159; 18 S. C. 394. *As to commeenis error faci pes:* 40 S. C. 100; Pom. Rem. No. 633. *No estoppel in pais:* Pom. Equity Juris., third Edit., secs. 806-807; 42 S. C. 351;

34 S. C. 187; 31 S. C. 487. *Appellants are estopped:* 38 S. C. 397; 18 S. C. 493; 97 S. C. 129; 89 S. C. 397; 18 S. C. 355, and cases cited.

*Messrs. Townsend & Rogers* (supplemental argument) submit: *The rights to the homestead was not fixed by the acquiescence of the parties:* 18 S. C. 554; Thompson on Homestead, sec. 260; 7 S. C. 172; 17 S. C. 364; 15 Wall. 610. *As to the contention that the sheriff sold the land subject to homestead:* 37 S. C. 192 (differentiated from cases at bar). *The testimony of C. P. Townsend was competent:* 65 S. C. 69; 24 S. C. 192. *As to estoppel:* 22 S. C. 312.

July 14, 1919.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

This action involves title to 150 acres of land; it is in equity and is for partition.

All parties concede that the title thereto was once in Jane Newton Cox, by a prior marriage, and that she inherited it from her father. The litigants on the one side contend that Jane's title was alienated by execution sale under a judgment against her, and that they got that title immediately from McColl, the purchaser at the execution sale. The litigants on the other side contend that Jane's title was not alienated by the execution sale, and for the reason that Jane had a homestead right in the land, and that it was duly assigned to her when the sheriff proceeded under the mandate of the execution; and that the right so assigned descended to her heirs at law, three of whom, to wit, her second husband, B. J. Newton, and two children, were not included in the deed made by McColl. So the particular issue is the right of Jane's husband, B. J. Newton, and Jane's child, William E. Cox, and the children of Jane's dead daughter, Hanah Cox Wallace. The Circuit Court

took the latter view, and directed the jury to so find. That is manifesty the wrong view. The general issue thus made and decided is renewed here, but by 11 exceptions in the place of less than half so many as were necessary to be made.

There are only three chief questions to be decided, and they are:

(1) What was the legal effect of the execution sale?

(2) What was the legal effect of the deed by McColl?

(3) What inferences of fact are to be drawn from the above two transactions?

Under these heads there are some subsidiary questions. The chief questions merged one into the other, and they will be so considered.

The judgment upon which the execution was issued and the sale was had was given in February, 1867. The right of homestead was created more than 1 year thereafter. Plainly, therefore, a right of homestead did not exist against the judgment. Many of the cases cited against the respondent have, therefore, no relevancy to the issue now up.

The judgment in question was a lien upon the land in question, and the land was subject to levy and sale under the execution. It will not be denied that, had no claim of homestead been made, and had the execution been levied and the sale made in the regular fashion without such homestead circumstance, then the fee of the land would have been alienated. And it is just as true that, had the sheriff proceeded to levy and sell in express denial of any right of homestead, in such a case the fee would have been alienated.

How is the matter materially altered that contrary to law a homestead was claimed, and homestead was set off, and the sale that was made was yet had? That question depends upon what was done thereabout, and calls for a particular attention to the procedure that was had.

The facts are these: That debtor claimed the homestead in formal fashion. The three commissioners in January, 1871, set off to her supposed right in these words:

"Beginning at the run of Beaver Dam Creek on the land of John M. Miller, thence down the run of said creek to S. R. Barrington's lands, thence with the lands of the said S. R. Barrington to the lands of Rebecca Townsend, thence with the lands of said Rebecca Townsend to the lands of William Wallace, thence with the lands of W. T. Wallace to a corner of ditch dividing the lands of said Wallace from the lands of said Jane Cox, thence down said ditch to a little branch into which it empties, thence with said little branch to a maple tree (marked by us 3x), a corner fixed by us, thence in a direct northern course until it intersects with the line of Mrs. Stanton or J. M. Miller, thence with the line of J. M. Miller or Mrs. Stanton and J. M. Miller to the beginning in the run of Beaver Dam Creek aforesaid, supposed to contain by us one hundred and forty acres, more or less, which we value as worth not more than one hundred dollars, and set apart by us to the said Jane Cox as and for her homestead."

The sheriff's salebook contains this entry dated October 2, 1871:

"*All that * * * land * * ** (particularly describing the same by boundaries) *to be sold* with the *reservation* of the defendants' homestead, consisting of 150 acres * * * which has been set apart by metes and bounds by commissioners, until after the expiration of its limitation." The italics are supplied.

The sale was had, but the deed which the sheriff made, if extant, was not in evidence. After the lapse of more than 40 years from the date of the sale it will be presumed that the sheriff made a deed in the performance of his duty, and did all else to effect a lawful sale, and that the deed was made in conformity with the entry in the salebook.

The legal effect of the transaction was an alienation of the fee. The case does not at all fall within *Martin v. Browne*, 37 S. C. 102, relied upon by the respondent. There the judgment had no lien; there the right of homestead existed, and the execution had no power to affect the fee, for it was clad with a coat of mail. Not so here, the fee was subject to the judgment lien; it was sold "with the reservation of the defendants' homestead." But there was in fact and law no homestead, though the parties thought there was; so no right was reserved; and if reserved, yet by the words of the transaction the fee was aliened supposedly incumbered with the homestead.

The respondents say, though, that the judgment creditor waived his right to subject the land to sale when he consented to the assignment of the homestead. That consent, they say, is implied from two circumstances, to wit, that the notice of a claim of homestead is in the handwriting of the judgment creditor, R. E. Townsend, and that the assignment of homestead is in the handwriting of D. D. McColl, who was attorney for Jane, the defendant. Admitting the two circumstances to be true, and admitting the inference to be drawn from them, yet the contended for inference of law, in view of other circumstances before recited and hereinafter recited, does not follow from them. The other circumstances are the words of the salebook before recited, and the deed which McCall, the purchaser, made to the six minor children of Jane (the plaintiffs herein) on October 6, 1871.

It is perfectly manifest from this record evidence that R. E. Townsend and D. D. McColl, both lawyers, thought at that early day in the history of homestead that the right of homestead existed against the judgment, and nevertheless that the fee could be aliened, and that the homestead would follow it like the incumbrance of a mortgage. The words of the deed by McColl are plain: "All that certain tract of land * * * containing 140 acres (boundaries

given) *being that * * * land laid off to Mrs. Cox for a homestead,* and this deed is intended to *convey the lands embraced in the said homestead* to the said parties after the expiration of the said homestead by its own limitation." The italics are supplied.

The land, with the supposed homestead fence around, was sold. The sale was not contrary to law, for the land was subject to sale.

The testimony of Mr. C. P. Townsend about the genesis of the McColl deed is not in its entirety competent, but some of it is. The deed shows on its face that the consideration was nominal; the witness proved that McColl was attorney for Jane; the deed was made almost contemporaneously with the execution sale; the witness, C. P. Townsend, testified, with all competence, that the deed was made after a conference with all parties; the circumstance that Jane occupied the land under the McColl deed from 1871 until her death in 1915 proves that she and all the parties understood that the fee had been aliened, but that Jane had the privilege of occupancy and enjoyment until her death.

The case of *Chalmers v. Turnipseed,* 21 S. C. 135, relied upon by the respondents is not contrary to this view. The facts of the two cases are totally different.

The judgment of the Circuit Court is reversed, and the cause is remanded, in order that the plaintiffs may have the partition which they pray for, and according to the law as we have stated it to be.

Messrs. Justices Hydrick and Watts concur.

Mr. Chief Justice Gary did not sit.

Mr. Justice Fraser, *dissenting.* So far as it affects this case, we find Mrs. Cox the owner in fee of the land described in the complaint. By agreement between Mrs. Cox and the creditors of their representatives this land is set aside to Mrs. Cox as a homestead: No one can raise the question

as to the validity of the homestead except the creditors, and they are not complaining.　Mrs. Cox had before the sale a fee.　The homestead, if it existed, was in fee.　A conveyance of a remainder after a fee is void, and the McColl deed conveyed nothing.　Only by the parol testimony, conceded to be incompetent, can the estate of Mrs. Cox be reduced to a life estate.　I do not think that these grantees under the McColl deed, who profited by the mistake, should be allowed to take the whole land to the exclusion of the other heirs of Mrs. Cox.　Judging solely by the competent portion of the records, I do not think the land set apart as a homestead of Mrs. Cox was included in the sale.　Certainly the interest or supposed interest of Mrs. Cox was not sold, and I think the judgment should be affirmed.